Benedict, D. J.
The barge Jonathan Chase, loaded with a sargo of 191 barrels of alcohol, on the twenty-eighth of February last was lying in one of the slips of the East river, moored by lines outside of the ship Montreal. At about daylight one of the men on board the barge, in passing over the cargo with a lantern, fell; the lantern was broken and the alcohol at once ignited. The flames at once enveloping the man, caused him to jump overboard, giving the alarm as he went. The other man on board the barge was then aroused and he at once left the barge; and the master of the ship to which the barge was moored east off the lines and set the barge adrift. The tug Starbuck approaching at the time took hold of the barge, but the alarm being given that the cargo was alcohol and likely to explode the Starbuck cast off her lines, and thus the barge was left adrift in the stream with her cargo in full blaze. By the time that she was at a distance from the piers variously estimated at 60 to 100 feet, the tug Niagara approached her. As she approached she was warned from the Starbuck that there was danger of an explosion; notwithstanding which she made fast to the barge, and being hailed by the firemen, who by this time had arrived with engines upon the pier, to bring the barge within range of their streams, she moved the barge up to the end of the pier and within range of the fire engines, which immediately began to play upon the fire. By this time the Havemeyer, a public fire-boat equipped and used for the sole purpose of putting out fire on the waters of the harbor of New York, *269 had approached, and by her powerful engines the fire was subdued. The Niagara remained by until the fire was extinguished, holding the barge in position at the pier by one of her lines.
An hour or so of time elapsed between the breaking out oí the fire and its subjugation. The time in which the Niagara was occupied in making fast to and getting the barge to the pier was but a few minutes. What would have been the result, had the Niagara followed the example of the Starbuck and declined to aid the barge, is left somewhat in doubt by the evidence; but, considering the inflammable nature of the cargo, it is plain that at the time the Niagara took hold every moment of delay added greatly to the risk of the total destruction of the cargo and serious injury to the barge. As it turned out, the barge was damaged to the amount of between $100 and $200. Twenty-three barrels of alcohol were lost, and 73 barrels so badly charred as to require new barrels. The value of the barge after the fire was $900 to $1,000. The sound value of the cargo before the fire was $3,060.84.
For the service thus rendered by the tug Niagara the libellants claim salvage compensation. The claimants deny that the service rendered was of value or entitled to be compensated as salvage. It cannot be doubted that the service rendered was a salvage service. It was a voluntary service, rendered in aid of property in danger of destruction on the sea. The only question open to serious discussion relates to the amount proper to be awarded.
The libellants claim that the property was derelict, and claim to be rewarded as in eases of saving derelict property. But while it is true that no person was on board the barge at the time the Niagara took hold of her, still the Havemeyer, a vessel maintained at the public expense for the sole purpose of affording aid in such a case, was within reach, and was sure to be able to come to her aid within a very few moments. And while it is true that the barge had been abandoned by those in charge of her, still she was in the Bast river, where she could not fail to receive assistance, if assistance could *270 avail anything to save her. Moreover, the service rendered by the tng would have been of no value whatever had it not been for the presence of the fire department. Indeed, had not the firemen been present on the dock, the barge could not have been aided in the least by the tug, as it would in that case have been impossible to have taken her to a pier for fear of igniting other vessels, and of no service to her to have been towed elsewhere. The presence of the firemen on the pier enabled the tug to place the barge where water could be got upon the fire a few moments sooner than would have been the case had the barge been left to be dealt with by the Havemeyer.
The barge was saved by the fire department, the tug contributing in some degree to that result. It is not a case, therefore, where the service of the tug can be rewarded as in. case of saving derelict property. Nor can the tug be entitled to all the credit of saving the property; and, of course she has no right to compensation for what the fire department did.
The tug should have a compensation liberal for the time; and labor expended, and increased by the fact that the service was rendered in the face of a supposed danger which caused one tug to abandon an attempt to render service; and this reward should also be. such as to encourage tugs to render aid to vessels that may be similarly situated in the future. But the law of salvage, while it gives a liberal reward, does not encourage extortionate demands. In view of all the circumstances, I am of the opinion that $350 is a proper salvage to be awarded to the tug for her services on the occasion in question.
The libellants are entitled to a decree for that amount, and also to their costs. An apportionment among those entitled to share will be made when required.